# Patton and Ruthrauff's Appeal: Crook's Estate.

A guardian in his account charged himself with "cash" received for his wards; part of the amount was not actually cash, but securities. After his death, his executors assigned the same securities to the succeeding guardian, leaving a balance still due the wards. The estate of the first guardian being insolvent, it was *held*, that in the distribution of his assets, the dividend should be made on the balance due the wards after deducting the securities assigned.

May 11th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the Orphans' Court of *Franklin county:* of May Term 1869, No. 30.

The appeal in this case was by James Patton and John Ruthrauff, from the decree of distribution of the Estate of Washington Crooks, deceased.

In January 1854, the decedent was appointed guardian of two minor children of Daniel Stahl, deceased, and Thomas Pauling became his surety.

Prior to the 1st of June 1858, the guardian filed accounts of his trust, and about that day died, leaving the appellants his executors. The accounts were confirmed August 13th 1858. In each of these accounts the guardian charged himself with sums amounting to $3037.47 as "Cash from Executor of D. Stahl, deceased," and also with "interest on the same." The aggregate balances against him appeared to be $5672.23. The decedent

[Patton's Appeal.]

died insolvent, and J. Stewart, Esq., was appointed auditor to distribute the balance in the hands of the executors amongst the creditors.

The auditor found the amount for distribution to be $9272.22. He also found and reported, that in the charges in cash in the guardian's account, were included a judgment in favor of D. Stahl, deceased, against one Powell, for $2562.64, also a note from John Ruthrauff for $200, and a note from John Coffey for $200. The auditor found that no part of these sums had ever been realized by the guardian, and after his death they were transferred by his executors, unchanged, to Henry Miller, the guardian of the Stahl minors appointed upon Crooks's death.

Before the auditor, Pauling, the surety of Crooks, contended that the distribution should be made to the minors on the whole balance appearing to be due on his guardianship accounts. The general creditors contended that the distribution should be made on the balance due the wards after deducting the amount of the above securities transferred to their present guardian.

The auditor reported that he could " find no authority which in his judgment would warrant him in making a distribution upon the balance of the guardian's account. He is of the opinion that these trust funds being no part of the estate of Washington Crooks, being traceable *in specie* in the hands of the executors and by them promptly transferred to the party to whom they belonged, should be deducted from the balance of the account before distribution is made." He made the distribution accordingly, and awarded a dividend of about 84 per cent. to the creditors. The court recommitted the matter to him, with directions to make an " alternate" report on the basis of allowing the wards a dividend on the whole balance appearing on Crooks' guardianship accounts. Under this report the dividend to the creditors was about 75 per cent. The court (King P. J.) confirmed the " alternate" report. This was the error assigned on appeal to the Supreme Court.

*W. Adams* and *F. M. Kimmel*, for appellants.

*J. McD. Sharpe*, for appellees, cited Kittera's Estate, 5 Harris 416; Morris *v.* Olwine, 10 Id. 441; Keim's Appeal, 3 Casey 43; Miller's Appeal, 11 Id. 481; Patten's Appeal, 9 Wright 152, McClintock's Appeal, 5 Casey 360.

The opinion of the court was delivered, July 6th 1869, by
READ, J.—Washington Crooks, as guardian of Henry Stahl and Malinda Catharine Stahl, minor children of Daniel Stahl, deceased, received from his executors an assignment of $2562.64, being a part of a judgment held by them against D. Powell, with interest from 1st April 1857, and also two notes for $200 each,

assigned by the said executors to him as guardian of said minors. Upon the judgments so assigned one year's interest was received by the guardian, upon whose decease his executors transferred these securities so earmarked, which were the property of his wards, to his successor in the guardianship.

Mr. Crooks shortly before his death filed his accounts as guardian, which were confirmed on the 13th August 1858, but before this day arrived the accountant was dead. His executors settled their accounts, and it appeared that the estate was insolvent. The account was referred to John Stewart, Esquire, as auditor, who in his report said, speaking of these securities so transferred to the new guardian:—"He is of the opinion that these trust funds being no part of the estate of Washington Crooks, being traceable *in specie* in the hands of the executors, and by them promptly transferred to the party to whom they belonged, should be deducted from the balance of the accounts before distribution is made." This the auditor did, and distribution was allowed on this amount so reduced by the auditor.

The Orphans' Court, not satisfied with this ruling, directed an alternate report, directing the distribution to be made on the whole apparent balance of the guardianship accounts, without any deductions for the trust funds handed over. This alternate report was confirmed by the court, and from this decree this appeal has been taken, and has been most ingeniously argued by the appellee's counsel by attempting to apply cases correctly decided by this court to the case before us.

The error has grown out of the improper method of stating the guardianship accounts, by calling cash what were really earmarked securities, received from the estate of the father of the wards, and never in any manner changed or altered by the guardian.

Correcting the balances, therefore, according to the actual facts, the first report of the auditor was right, and the alternate report wrong:

> The decree of the Orphans' Court is reversed, and the first report of the auditor is confirmed, and the record remitted to the Orphans' Court, with directions to carry the same into full effect.